# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| | : | |
| v. | : | Cr. No. 11-076 |
| | : | |
| **AMOS SINGLETON** | : | |
| a/k/a "Aziz Mahadi" | : | |
| a/k/a "Aziz Hankerson" | : | |

**Norma L. Shapiro, J.**                                                 **June 24, 2013**

<u>MEMORANDUM</u>

Amos Singleton ("Singleton") was convicted by a jury on four counts: (1) conspiracy to commit robbery which interferes with interstate commerce, in violation of 18 U.S.C. § 1951(a); (2) robbery which interferes with interstate commerce, in violation of 18 U.S.C. § 1951(a); (3) using and carrying a firearm during a crime of violence, in violation of 18 U.S.C. § 924(c)(1); and (4) convicted felon in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1).

Singleton filed a timely post-trial motion for judgment of acquittal under Fed.R.Crim.P. 29(c)(1) or, in the alternative, for a new trial under Fed.R.Crim.P. 33(b)(2), and/or for an arrest of judgment under Fed.R.Crim.P. 34(a)(1); he filed a memorandum of law in support of his motion after receipt of the trial transcripts. The court will deny the motions for acquittal on Counts I – III[1] because the government offered sufficient evidence at trial for a reasonable jury to convict Singleton of the charges against him. The court will deny the motions for a new trial because the court did not err when it denied Singleton's pre-trial motions to suppress, and the government's comments during summation did not unfairly prejudice him. The court will deny

---

[1] Singleton does not move for acquittal on Count IV.

the motion to arrest judgment because the indictment was sufficiently clear to charge Singleton appropriately as to both 18 U.S.C. § 1951 (a) and 18 U.S.C. § 924(c)(1)(a).

## I.     BACKGROUND

On November 1, 2010, shortly after 4:00 p.m., Barbara Jablokov ("Jablokov") was shot and robbed while working as the manager of the Walnut Lane Apartment complex ("Walnut Lane") in Philadelphia.  On the date of the robbery, co-defendant Corey Pasley ("Pasley"), employed as an armed security guard at Walnut Lane, arrived an hour early for his shift.  Pasley and Jablokov were conversing in the front office when Pasley received a phone call and excused himself; after his return moments later, Pasley opened the front door for Singleton who entered the office brandishing a handgun.  Singleton had a mask around his neck but nothing covering his face.

Singleton then approached Jablokov at her desk in a manner preventing her from using the office panic button.  He placed the gun against her face and moved her into the rear office. Pasley followed behind.

Once in the back office, Singleton fired one round into Jablokov's right cheek; she suffered extensive damage and severe bleeding.  Jablokov, ordered to hand over the keys to the locked safe, dumped the contents of her purse on the floor.  While Singleton searched for the keys, Jablokov reached for her own handgun and attempted to shoot him.  Singleton wrestled the gun away from Jablokov before emptying the safe.

Jablokov attempted to escape from the office but was blocked at the door by Pasley lying on the floor near the exit.  Pasley told Jablokov that she could not leave and grabbed her leg. Jablokov kicked Pasley in the face and escaped.  Once outside, Jablokov told those assisting her that the security guard had been involved in the robbery.

The police found Pasely at Walnut Lane with blood on his hands. Taken to the hospital, he was examined and found to have no physical injuries. Following his discharge, Pasley was detained by the police; his shoes, sweatshirt, and cellular telephone ("cell phone") were seized.

The next day, the police determined Pasley's cell phone had been called by the number (267) 6220- 0709 ("the 0709 number") immediately before the robbery. The police recovered the Metro PCS telephone records for the 0709 number, assigned to an individual named "Aziz Mahadi." Pasley had been in contact with the number multiple times on the date of the robbery. The person using the 0709 number also placed several calls to the Pennsylvania Department of Public Welfare (DPW) office on or around the day of the robbery. The police, contacting the DPW, learned that the 0709 number was associated with Singleton.

On November 5, 2010, the Philadelphia Police Department arrested Singleton under a valid arrest warrant for an unrelated robbery. When arrested, Singleton identified himself as "Aziz Hankerson." The arresting officers recovered a Kyocera Metro PCS cell phone from Singleton's pocket. The police later returned to the apartment building with a valid search warrant and seized masks, latex gloves, and Jablokov's handgun.

At trial, FBI Special Agent William Shute testified as an expert witness in the area of cell site analysis. He established that the cell phone recovered from Singleton when he was arrested was located within a few blocks of Walnut Lane moments before the robbery.

Defendant moved to suppress the cell phone records of Aziz Mahadi, information recovered from DPW, physical evidence recovered from his apartment, and Jablokov's second photo array and in-court identifications. The court, after hearings on the suppression motions, denied them because: (1) defendant had no expectation of privacy in cell phone records not in his legal name

and registered to a fictitious address; (2) the phone records were acquired pursuant to a valid search warrant; (3) defendant had no privilege in the information from the DPW; (4) the physical evidence was seized from Singleton's apartment pursuant to a valid search warrant and/or incident to a valid arrest; and (5) Jablokov's second photo array identification and in-court identification were reliable.

## II. DISCUSSION

### A. Motion for Acquittal

Federal Rule of Criminal Procedure 29 provides that, "the court on the defendant's motion must enter a judgment of acquittal of any offense for which the evidence is insufficient to sustain a conviction." Singleton bears a heavy burden to show insufficiency of the evidence; the court must "review the record in the light most favorable to the prosecution to determine whether any rational trier of fact could have found proof of guilt beyond a reasonable doubt based on the available evidence." *United States v. Smith*, 294 F.3d 473, 476 (3d Cir. 2002). The court must "draw all reasonable inferences in favor of the jury's verdict," and should only find insufficient evidence to sustain a conviction when the prosecution's failure to prove its case is clear. *Id*. at 476-77.

#### 1. Conspiracy

Singleton disputes there was sufficient evidence at trial from which a reasonable jury could conclude beyond a reasonable doubt that the defendant reached an agreement with Corey Pasley to rob Walnut Lane. To sustain a conviction for conspiracy, the government much show beyond a reasonable doubt that Singleton and Pasley had "(1) a shared unity of purpose, (2) an intent to achieve a common goal, and (3) an agreement to work together toward the goal."

*United States v. Perez,* 280 F.3d 318, 342 (3d Cir.2002). Although each element of a criminal conspiracy must be proven beyond a reasonable doubt, each may be proven entirely by circumstantial evidence. *United States v. McGlory,* 968 F.2d 309, 321 (3d Cir.1992).

Barbara Jablokov testified that on the afternoon of the robbery, Pasley arrived unusually early for work. He opened the door to the front office to allow Singleton to enter, stepped aside when Singleton entered, followed behind Singleton for much of the robbery, never made any efforts to prevent the robbery or assist Jablokov, and attempted to block Jablokov from escaping after she was shot. Doc. no. 180, Tr. at 11:3 – 7; 12:22 – 20:24. Pasley was one of the few individuals with knowledge of the location of the office emergency security button, security cameras, and safe; Singleton appeared to act with knowledge of these at the time of the robbery. *Id.* at 8:8 – 9: 5. Unlike Jablokov, Pasley escaped the robbery unharmed.

Telephones registered to subscribers residing at the addresses of Singleton and Pasley exchanged six calls on the day of the robbery, including one minutes before the robbery and approximately the time Pasley excused himself from Jablokov's office to answer his phone. Doc. no. 183, Tr. at 23:13 – 25: 14; 64:16. Singleton's telephone was within a few blocks of the Walnut Lane Apartments at that time. *Id.* at 48:19 – 49:8. A reasonable jury could have found from the circumstantial evidence that Singleton and Pasley shared a unity of purpose, had intent to achieve the common goal of robbery, and were in agreement to work together toward that goal. The evidence at trial, viewed in the light most favorable to the government, was sufficient to sustain a rational jury's conviction for conspiracy; the motion for acquittal and/or new trial on Count I will be denied.

## 2. *Interstate Commerce*

Singleton contends there was not sufficient evidence from which a reasonable jury could conclude beyond a reasonable doubt that his actions obstructed, delayed or affected items moving in interstate commerce as required to sustain a conviction on Counts I-III. Under 18 U.S.C. § 1951(a), "[w]hoever in any way or degree obstructs, delays, or affects commerce or the movement of any article or commodity in commerce, by robbery or extortion or attempts or conspires so to do, or commits or threatens physical violence to any person or property in furtherance of a plan or purpose to do anything in violation of this section shall be fined under this title or imprisoned not more than twenty years, or both."  18 U.S.C. § 1951(a); *see also United States v. Local 560 of the Int'l Bhd. of Teamsters, Chauffeurs, Warehousemen, and Helpers of Am.,* 780 F.2d 267, 281 (3d Cir. 1985), *citing United States v. Addonizio,* 451 F.2d 49, 59 (3d Cir. 1971)(the primary elements of a Hobbs Act violation are: "(1) that the defendants induce their victims to part with property; (2) that the defendants do so through the use of fear; and (3) that, in so doing, the defendants adversely affect interstate commerce").

Commerce is defined broadly under the Act and includes "all . . . commerce over which the United States has jurisdiction."  *See also U.S. v. Walker*, 657 F.3d 160, 179 (3d Cir. 2011), *citing Stirone v. United States,* 361 U.S. 212, 215 (1960) ("[The Hobbs Act] speaks in broad language, manifesting a purpose to use all the constitutional power Congress has to punish interference with interstate commerce by extortion, robbery or physical violence").  In a Hobbs Act prosecution, proof of a *de minimis* effect on interstate commerce is all that is required. *United States v. Urban,* 404 F.3d 754, 766 (3d Cir. 2005).  The Court of Appeals has upheld jury instructions stating that the *de minimis* effect in an individual Hobbs Act case need only be potential. *Id*; *United States v. Haywood,* 363 F.3d 200, 209–10 (3d Cir. 2004)(if the defendants'

conduct produces any interference with or effect upon interstate commerce, whether slight, subtle or even potential, it is sufficient to uphold a prosecution under § 1951). A robbery resulting in the seizure of money used by a business to make interstate purchases may run afoul of the Hobbs Act. *United States v. Inigo,* 925 F.2d 641, 648-49 (3d Cir. 1991).

The government offered evidence of Walnut Lane's efforts to attract tenants from New Jersey and New York by advertising in various regional and national news outlets. Doc. no. 180, Tr. at 27: 14-17. At the time of the robbery, the complex had at least one resident who came from New York City. *Id.* at 27:22; Doc. no. 182, Tr. at 44:20. Management often made interstate purchases, transacting with national businesses to purchase items such as stoves and refrigerators from out of state. Doc. no. 180, Tr. at 28:8-11; Doc. no. 182, Tr. at 45:20. Walnut Lane also lost approximately $4,000 in cash and money orders as a result of the robbery. Doc. no. 180, Tr. at 30:11-13. Jablokov was unable to manage the business for a few months because of her injuries; her son took over her responsibilities but endured management difficulties in her absence. Doc. no. 182, Tr. at 46:10-12.

A reasonable jury could have found evidence beyond a reasonable doubt that Singleton's efforts had at least a *de minimis* impact on interstate commerce. The evidence at trial, viewed in the light most favorable to the government, was sufficient to sustain a rational jury's conviction on the interstate commerce and related firearms charges. The motion for acquittal and/or new trial on Counts I-III will be denied.

### A.      Motion for a New Trial

Singleton, contending the court erred when it denied his motions to suppress various items of evidence, moves for a new trial. He also contends a new trial is necessary because

comments made by the government were fundamentally unfair and resulted in a denial of his due process rights.

Federal Rule of Criminal Procedure 33 provides the court may grant a motion for a new trial "if the interest of justice so requires." Fed.R.Civ.P. 33. A court should grant a new trial "if it ascertains that the verdict constitutes a miscarriage of justice." *United States v. Rhines*, 143 F. App'x 478, 484 (3d Cir. 2005). The court may also grant a new trial if there is a need to correct a clear error of law in an evidentiary ruling that had a substantial influence on the jury's decision. *Gov't of V.I. v. Bedford*, 671 F.2d 758, 762 (3d Cir. 1982). Rule 33 motions are not favored and should be granted only with great caution in the most extraordinary circumstances. *Rhines*, 143 F. App'x at 484. Because the verdict is presumed valid, Singleton bears a heavy burden to obtain a new trial. *United States v. Cimera*, 459 F.3d 452, 458 (3d Cir. 2006).

1. *Failure to Suppress Evidence*

a. <u>**Defendant's Cell Phone Records**</u>

Defendant argues the court erred in refusing to suppress the cell phone records obtained by the police for a customer with the name of Aziz Mahadi; defendant further argues that all evidence recovered as a result of the illegal release of the cell phone records, including the defendant's name, address, cell phone, masks, and Barbara Jablakov's firearm, should have been suppressed.

The court denied the defendant's initial motion to suppress. Following pre-trial hearings, at which the defendant orally requested the court to reconsider its decision, the court again denied defendant's motion. Doc. no. 134, Tr. at 147:3. The court found that the defendant had

no expectation of privacy in cell phone records not in his legal name and registered to a fictitious address, and that the records were acquired pursuant to a valid search warrant.

The proponent of a motion to suppress "bears the burden of proving not only that the search . . . was illegal, but also that he had a legitimate expectation of privacy in [the place searched]." *United States v. Stearn,* 597 F.3d 540, 551 (3d Cir. 2010), *citing Rawlings v. Kentucky,* 448 U.S. 98, 100 (1980). In the context of the Fourth Amendment's exclusionary rule, the question of whether a defendant has "standing" to assert a violation of the Fourth Amendment is simply "shorthand for the determination of whether a litigant's Fourth Amendment rights have been implicated," as opposed to the rights of another. *United States v. Mosley,* 454 F.3d 249, 235 n. 5 (3d Cir. 2006).

Legitimation of expectations of privacy by law must have a source outside the Fourth Amendment, either by reference to concepts of real or personal property law or to understandings that are recognized and permitted by society. *Rakas v. Illinois,* 439 U.S. 128, 143 n.12 (1978). A defendant has no expectation of privacy in a parcel addressed to a name other than the defendant. *E.g., United States v. Daniel*, 982 F.2d 146 (5th Cir. 1993)(defendant did not have standing to challenge seizure of a parcel addressed to defendant's alias); *United States v. Lewis,* 738 F.2d 916, 919-20 n. 2 (8th Cir. 1984)(defendant lacked legitimate expectation of privacy in mailbox and contents labeled with a fictitious name).

Absent a formal or informal name change, Singleton had no privacy rights in the cell phone records of Aziz Mahadi.[2] Under Title 54 Pa.C.S. § 701 (b), "[n]otwithstanding subsection (a) [pertaining to the formal procedure for name change], a person may at any time adopt and use

---

[2] According to the government, "when you run the name that is indicated on the cell phone records [Aziz Mahadi], through law enforcement databases, it comes back as a person unknown and un-found." Doc. no. 113, Tr. at 6:9-16.

any name if such name is used consistently, nonfraudulently and exclusively.  The adoption of such name shall not, however, be in contravention of the prohibitions contained in section 702(c)(relating to change by order of court)." *See also* 54 Pa.C.S. § 702(c)(2)(a court is restricted in ordering a change of name for a person convicted of certain felonies, including robbery as defined in 18 Pa.C.S. § 3701(a)(1)(i) and robbery of a motor vehicle).  Singleton did not adopt the name Aziz Mahadi exclusively; his Department of Public Welfare benefits were provided to Amos Singleton, his criminal history was recorded under the name Amos Singleton, and, when arrested, Singleton identified himself to the officers as "Aziz Hankerson."  Doc. no. 75, Tr. at 37:12.  Singleton did not informally change his name to Aziz Mahadi in a legal manner; he had no expectation of privacy in the cell phone records at issue and no standing to challenge their release.

The records were obtained pursuant to a valid warrant.  Investigating officers obtained search warrant #153179 from a Philadelphia Court of Common Pleas Magistrate Judge.  Doc. no. 75, Tr. at 14:16.  The judge determined  probable cause existed to obtain "[s]ubscriber information, call detail records, including cell tower locations and usage logs for target phone number 267-622-0709," from Metro PCS.  Search Warrant # 153179.   Over the course of the next two days, the cell phone records were provided to the government by Metro PCS.  The records were lawfully obtained and were admissible at trial; the defendant's motion for a new trial will be denied.

### b. Evidence Secured Via Information Contained in Defendant's Department of Public Welfare Records

Defendant argues the court erred in refusing to suppress the evidence secured from information contained in his DPW records because the information contained in his records was protected by common law privilege and should not have been released to the government in the absence of a court order. Singleton further argues the physical evidence uncovered as a result of the disclosure to the police of the privileged information should have been suppressed as fruit of the poisonous tree. Def.'s Mem. Supp. Mtn. Judg. Acq. 24.

Prior to trial, Singleton, arguing that the records were privileged[3] and should not have been released without a court order, filed a motion to suppress the evidence secured by warrantless access to information contained in his public assistance records. Def.'s Mem. Supp. Mtn. Suppress Evid. Secured Via Warrantl. Access to Pub. Assist. Rec. 4-5. This court, holding there was no expectation of privacy in welfare records, denied the motion. Doc. no. 113, Tr. at 5:25-6:1. Singleton now raises the same arguments.

Under Rule 501 of the Federal Rules of Evidence:

> Except as otherwise required by the Constitution of the United States or provided by Act of Congress or in rules prescribed by the Supreme Court pursuant to statutory authority, the privilege of a witness, person, government, State or political subdivision thereof shall be governed by the principles of the common law as they may be interpreted by the courts of the United States in the light of reason and experience.

---

[3] The government argues the privilege argument is waived because Singleton failed to raise this argument in pre-trial motions. It is true that a defendant's failure to raise a motion to suppress argument pre-trial can result in waiver. *See* Fed.R.Crim.P. 12(b)(3)(C)(a motion to suppress evidence must be raised before trial); *United States v. Dupree,* 617 F.3d 724, 728 (3d Cir.2010) ("[W]hen a party seeks reversal of a suppression ruling on appeal, any arguments not raised in the district court are waived absent a showing of good cause ...."). The rule does not apply here because Singleton raised the privilege argument in his motion to suppress evidence secured via warrantless access to information contained in his public assistance records.

Fed.R.Evid. 501.   This rule recognizes four types of privilege: 1) those created by the Constitution ; 2) those created by "Act of Congress"; 3) those created by Supreme Court rule; and 4) those recognized by the common law.  Fed.R.Evid. 501.

Defendant rests his argument on *In re Grand Jury Subpoena Dated Nov. 14, 1989,* 728 F. Supp. 368, 374 (W.D. Pa. 1990), not binding on this court.  There is no constitutional or congressionally-created privilege in DPW records; neither the Supreme Court nor the Court of Appeals for the Third Circuit has recognized a qualified privilege in DPW records.  Singleton enjoyed no federal common law privilege in his name and address provided to the investigating officers by the DPW; there is no reason to suppress the physical evidence uncovered as a result of the disclosure to the police of defendant's name and address.   Singleton's motion for a new trial will be denied.

c.   Barbara Jablakov's Firearm

Singleton argues the court erred in refusing to grant his motion to suppress evidence seized at the time of his arrest.  Singleton focuses his argument on the court's failure to suppress Barbara Jablakov' firearm; Singleton alleges that the "undisputed competent evidence," establishes that investigating officers who searched Singleton's apartment, "planted the gun, and then submitted to the judicial magistrate a false affidavit in order to conceal the fact that they had conducted an illegal search or planted the gun."  Def.'s Mem. Supp. Mts. Acq. 8-9.

At a hearing on Singleton's motion to suppress, detective John Gelibter ("Gelibter") testified about his role in the investigation of the robbery.  He executed a warrant for Singleton's arrest arising out of an unrelated bank robbery.  Officers conducted a sweep of the house at 2634 Silver Street at the time and broke open a padlocked utility closet on the second floor to see if

anyone was hiding in the closet.  Doc. no. 75, Tr. at 19:1.  The officers found Jablakov's handgun in the padlocked closet, located off the second floor common hallway and not in Singleton's apartment.   The landlord was the only person who had a key to the closet.  *Id.* at 21:24-25.  According to Gelibter, the space underneath the door of the closet was large enough to allow a person to "slide a gun underneath.  [Someone] could put something into the closet without opening the door."  *Id.* at 35:1-3.  Following the arrest, investigating officers obtained search warrant #153184; items, including the firearm, were then seized.  *Id.* at 17:24 - 18:1; Search Warrant #153184.

The "touchstone of Fourth Amendment analysis is whether a person has a constitutionally protected reasonable expectation of privacy." *California v. Ciraolo*, 476 U.S. 207, 211 (1986).  The Supreme Court has formulated a two-part test to determine whether an expectation of privacy is reasonable under the Fourth Amendment. *Id*.  First, "has the individual manifested a subjective expectation of privacy in the object of the challenged search? Second, is society willing to recognize that expectation as reasonable?" *Id*. The Court of Appeals has held there is no reasonable expectation of privacy in the common areas of an apartment building. *See United States v. Acosta*, 965 F.2d 1248, 1252 (3d Cir. 1992). Only when the defendant has the right to keep a place private and subject to his exclusive control would a reasonable expectation of privacy attach.  *United States v. Porter*, 281 Fed. App'x 106, 110 (3d Cir. 2008).   Singleton did not have any control over the area from which the gun was recovered, much less exclusive control. Any expectation of privacy Singleton may have manifested in the utility closet was unreasonable.

None of the evidence presented at the pre-trial hearings or trial support defendant's allegation that the investigating officers planted the gun or submitted a false affidavit in an effort to acquire a warrant to search the closet. Nor is there any evidence that the initial search of the utility closet was illegal. Gelibter's pre-trial testimony on the issue was clear: the firearm was discovered at the time of the arrest and seized during the execution of the search warrant.[4] The court did not commit error when it denied the motion to suppress; the motion for a new trial will be denied.

### d. Witness Identification Evidence

Defendant argues the court erred in refusing to grant his motion to suppress Jablokov's second photo array and in-court identifications. Singleton emphasizes Jablokov was unable to identify his photo in the first array she was shown and her resulting second array and in-court identifications were unconstitutionally suggestive.

An identification procedure violates due process only if it is both: "(1) unnecessarily suggestive, and (2) creates a substantial risk of misidentification." *United States v. Brownlee,* 454 F.3d 131, 137 (3d Cir. 2006). If the identification can be shown to be reliable under the totality of the circumstances, there is no due process violation, even in the case of an unnecessarily suggestive procedure. *United States v. Emanuele,* 51 F.3d 1123, 1128 (3d Cir. 1995), *citing Manson v. Brathwaite,* 432 U.S. 98, 106 (1997). Analyzing the totality of the

---

[4] The defendant alleges there is confusion over when Barbara Jablakov's firearm was seized. The 75-51 document attached to the search warrant application states that, "[d]uring Singleton's arrest the complainants [sic] Beretta pistol was recovered." Search Warrant #153184. The face of the search warrant includes a list of the property seized as a result of the search in accordance with the warrant, including "Beretta Jablakov Pistol." *Id.*

At the pre-trial hearing, Gelibter clarified the Beretta was discovered at the time of the arrest, but it was not seized until after the officers returned with the warrant. Gelibter's testimony that the firearm was seized after the defendant was arrested, once the officers acquired a search warrant for the apartment, was credible; any confusion concerning when the firearm was seized was clarified at that time.

circumstances should include the quality of the witness' original opportunity to view the defendant. *Neil v. Biggers,* 409 U.S. 188, 199 (1972).

The court denied the defendant's motion to suppress the out-of-court witness identification evidence because it found the photo array shown to Barbara Jablakov months after the robbery was not unconstitutionally suggestive merely because it was the second array shown to a witness unable to make an identification from the first. *United States v. Berryman,* 322 Fed. App'x 216, 221 (3d Cir. 2009)(upholding robbery victim's identification of defendant in second array despite fact that victim failed to identify defendant in first array); *United States v. Dowling,* 855 F.2d 114, 118 (3d Cir. 1998)(any suggestiveness arising from the "repeated use of different photographs of [defendant] in succeeding photo arrays" was "slight, and likely inadvertent"). The court also considered the totality of the circumstances and found that Singleton's placement as first in the array was not unduly suggestive. *United States v. Foote,* 2011 WL 2489904, *2 (3d Cir. June 23, 2011); *c.f., United States v. Lawrence,* 349 F. 3d 109, 115 (3d Cir. 2003).

Singleton reiterates the arguments already rejected by this court and fails to point out any error in the evidentiary ruling. The witness had ample opportunity to view Singleton in a lit office at the time of the robbery before she was shot; the witness's inability to identify Singleton immediately after the robbery, when heavily medicated and having recently undergone surgery, does not persuade the court that the identification in the second photo array involved a substantial risk of misidentification. Months passed after the first photo array and before the second. Taking into consideration the totality of the circumstances, the witness identification was reliable.

The court also denied the motion to suppress Barbara Jablokov's in-court identification because it also found that identification reliable. Defendant argues the in-court identification was "the only evidence introduced by the Government directly implicating the Defendant in the robbery." Def.'s Mem. Supp. Mtn. New Tr. 18. This is simply not so. The evidence concerning the items confiscated from Singleton's apartment, in addition to the evidence regarding the location of his cell phone minutes before the robbery, all implicate him. The court did not commit error when it denied the motion to suppress; the motion for a new trial will be denied.

### 2. *Government's Rebuttal Comment Regarding DNA Evidence*

Singleton argues the court should grant his motion for a new trial because the government's comment regarding DNA evidence during its rebuttal was fundamentally unfair and resulted in denial of his due process rights.

"The prosecution may not comment on a defendant's failure to testify and may not improperly suggest that the defendant has the burden to produce evidence." *United States v. Balter,* 91 F.3d 427, 441 (3d Cir. 1996). The court looks to three factors to determine whether improper comments were prejudicial: the scope of the comments within the context of the entire trial, the effect of any curative instructions given, and the strength of the evidence against the defendant. *United States v. Mastrangelo,* 172 F.3d 288, 297 (3d Cir.1999); s*ee also United States v. Young,* 470 U.S. 1, 11 (1985)(a criminal conviction is not to be lightly overturned on the basis of a prosecutor's comments standing alone, for the statements or conducts must be viewed in context; only by so doing can it be determined whether the prosecutor's conduct affected the fairness of the trial). "Improprieties in a prosecutor's remarks warrant a new trial

only if they are so gross that there is a probability of prejudice to the defendant [ ] and such prejudice was not neutralized by the court." *United States v. Gaines,* 726 F.Supp. 1457, 1469 (E.D.Pa.1989), *aff'd,* 902 F.2d 1562 (3d Cir.), *cert. denied,* 498 U.S. 844 (1990). Any harm from prosecutorial misconduct must affect a substantial right and the prejudice must be balanced against the evidence of guilt. *Gaines,* 726 F.Supp. at 1469; *United States v. Gonzalez,* 833 F.2d 1464, 1467 (11th Cir. 1987)("[g]iven the overwhelming evidence against [the defendant], her substantial rights were not prejudiced by the ... remark of the prosecutor."). It is not enough if a prosecutors' remarks were undesirable or even universally condemned. The relevant question is whether the prosecutors' comments "so infected the trial with unfairness as to make the resulting conviction a denial of due process." *Darden v. Wainwright,* 477 U.S. 168, 181 (1986). In considering the context of the prosecutor's remarks, the court must also consider those of defense counsel's. *Young,* 470 U.S. at 12.

Counsel for Singleton, in his summation, commented on the lack of DNA evidence at trial; he stated that, despite swabs having been taken from the defendant, crime scene, and firearms, "[w]e haven't heard any DNA evidence. . . . Where is it? It's not here because it doesn't show that there was a positive identification with Amos Singleton. . . . If they had it, you would have seen it." Doc. no. 183, Tr. at 140:16-20. In his rebuttal, counsel for the government then stated:

> Let me make it very clear, the Defense has no obligation to put on any evidence to demonstrate anything. They don't have to throw a scintilla of evidence into this courtroom, nothing, nada. By the same token, they have subpoenas, they can bring in witnesses. I guarantee you, if such a witness could come in and just blow this case out of the water, you would have heard from him.

*Id.,* Tr. at 154:14-21. The defendant made no objection to the government's comments at the time of trial, so the court reviews for plain error. *United States v. Tiller,* 302 F.3d 98, 105 (3d Cir. 2002).

To the extent the government's comments were improper, they were not sufficiently prejudicial to warrant a new trial. The evidence against the defendant, including the victim's witness identification, physical evidence recovered from his apartment, and testimony regarding the location of his cell phone moments before the robbery, was strong. The DNA statement was also less an implication that the defendant had a burden to produce evidence than an invited response to defendant's own comments. *See United States v. Young,* 470 U.S. 1, 12–13 (1985)(challenged remarks of the prosecutor should be weighed in light of earlier remarks of defense counsel because "if the prosecutor's remarks were 'invited,' and did no more than respond substantially to 'right the scale,' such comments would not warrant reversing a conviction").

The statement was also made in the context of the government's reiteration that defendant had no obligation to produce any evidence. The existence of Singleton's immunity/proffer agreement did not make the comment particularly unfair.[5] The statement did

_____

[5] Singleton argues the government's comments were "patently unfair," because he was limited in his ability to present evidence as a result of a court order granting the government's motion in limine concerning Singleton's immunity/proffer agreement. Under the agreement, the government was permitted to introduce statements made by Singleton in his off-the-record proffer, detailing his involvement in the Walnut Lane robbery, if Singleton presented any argument at trial contradicting the off –the-record statement. Gov.'s Mtn. Permit Introd. Evid. 2-3.

Singleton now argues, "the Government clearly implied that the Defendant had the ability to produce evidence, which it could not produce, as it may have been viewed by the Court as violating the Defendant's immunity/proffer agreement." Def.'s Memo Supp. Post-trial Mtn. 22. This argument is unpersuasive because the government's rebuttal comment was in response to defense counsel's own statement.

not amount to plain error affecting the fairness of the trial. Defendant's motion for a new trial will be denied.

## B.    Motion to Arrest Judgment

Defendant argues the court should grant his motion to arrest judgment because the government failed to charge the defendant appropriately in the Indictment. Specifically, defendant states the Indictment failed to include the statutory language "in furtherance of a plan or purpose," from 18 U.S.C. § 1951(a), or "in furtherance of any such crime," from 18 U.S.C. § 924(c)(1)(A)(ii).

The Sixth Amendment of the United States Constitution requires that in criminal prosecutions, "the accused shall enjoy the right to be informed of the nature and cause of the accusation." To meet this requirement, Federal Rule of Criminal Procedure 7(c)(1) requires that an indictment be a "plain, concise and definite written statement of the essential facts constituting the offense charged." The court must consider a two part test to measure the sufficiency of an indictment: (1) whether the indictment contains the elements of the offense intended to be charged and sufficiently apprises the defendant of what he must be prepared to meet; and (2) enables the defendant to plead an acquittal or conviction in bar of future prosecutions for the same offense. *Russell v. United States*, 369 U.S. 749, 763–64 (1962). An indictment need not contain statutory language word for word if alternative language is used or the essential elements are charged in the indictment by necessary implication. *US v. Hodge,* 21 F.3d 74, 76 (3d Cir. 2000)(indictment sufficient to meet the requirements under Fed.R.Crim.P. 7(c)(1) despite failure to recite explicitly the element of specific intent).

This indictment tracks the necessary statutory language and contains the elements of the offense intended to be charged. The Indictment sufficiently appraised the defendant of the charges against him. The notion that defendant's efforts were in furtherance of a conspiracy or a crime is implied by the indictment's clear language; the exact statutory language was not necessary. The indictment sufficiently alleges Singleton's actions were in furtherance of a plan or purpose to violate 18 U.S.C. § 1951(a) and in furtherance of a crime in violation of 18 U.S.C. § 924(c)(1)(A)(ii); the motion for arrest of judgment will be denied.

III.  **CONCLUSION**

The court will deny Singleton's motion for acquittal and/or for arrest of judgment; his motion for a new trial will also be denied. An appropriate order follows.