## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | |
| v. | : | CRIMINAL NO. 2:11-76-(1) |
| | : | |
| AMOS SINGLETON | : | |

## MEMORANDUM

**JONES, II   J.**                                                        **August 5, 2022**

Amos Singleton has filed a motion requesting compassionate release from prison for

"extraordinary and compelling reasons" under 18 U.S.C. § 3582(c)(1)(A)(i).  For the reasons set

forth below, his motion will be denied.


**I.      BACKGROUND**

Amos Singleton was convicted by a jury of four criminal offenses in this matter, all

stemming from his violent robbery of a Philadelphia apartment complex in 2010.  The trial

judge, the late Honorable Norma L. Shapiro, described the factual circumstances of the robbery

as follows:

> On November 1, 2010, shortly after 4:00 p.m., Barbara Jablokov ("Jablokov") was
> shot and robbed while working as the manager of the Walnut Lane Apartment
> complex ("Walnut Lane") in Philadelphia. On the date of the robbery, co-defendant
> Corey Pasley ("Pasley"), employed as an armed security guard at Walnut Lane,
> arrived an hour early for his shift. Pasley and Jablokov were conversing in the front
> office when Pasley received a phone call and excused himself; after his return
> moments later, Pasley opened the front door for Singleton who entered the office
> brandishing a handgun. Singleton had a mask around his neck but nothing covering
> his face.
>
> Singleton then approached Jablokov at her desk in a manner preventing her from
> using the office panic button. He placed the gun against her face and moved her
> into the rear office. Pasley followed behind.

> Once in the back office, Singleton fired one round into Jablokov's right cheek; she suffered extensive damage and severe bleeding. Jablokov, ordered to hand over the keys to the locked safe, dumped the contents of her purse on the floor. While Singleton searched for the keys, Jablokov reached for her own handgun and attempted to shoot him. Singleton wrestled the gun away from Jablokov before emptying the safe.
>
> Jablokov attempted to escape from the office but was blocked at the door by Pasley lying on the floor near the exit. Pasley told Jablokov that she could not leave and grabbed her leg. Jablokov kicked Pasley in the face and escaped.

June 24, 2013 Mem. Denying Post-Trial Motions (ECF No. 190) at 2.  Mr. Singleton was convicted of all four counts charged in the indictment: (1) conspiracy to commit robbery which interferes with interstate commerce, in violation of 18 U.S.C. § 1951(a); (2) robbery which interferes with interstate commerce, in violation of 18 U.S.C. § 1951(a); (3) using and carrying a firearm during a crime of violence, in violation of 18 U.S.C. § 924(c)(1); and (4) convicted felon in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1).  Judge Shapiro sentenced him to a term of imprisonment of 360 months, to be followed by 5 years of supervised release.  Mr. Singleton filed an appeal alleging numerous claims of error, which were all denied by the Third Circuit Court of Appeals.  The Supreme Court denied his petition for certiorari on October 6, 2014.

## II.     LEGAL STANDARD

"'A judgment of conviction that includes a sentence of imprisonment constitutes a final judgment' and may not be modified by a district court except in limited circumstances." *Dillon v. United States*, 560 U.S. 817, 824 (2010) (quoting 18 U.S.C. § 3582(b)); *see also In re Morris*, 345 F. App'x 796, 797 (3d Cir. 2009) ("Once a term of imprisonment has been imposed, a district court has the authority to modify it only in limited circumstances.").  One such exception is set forth in 18 U.S.C. § 3582(c)(1)(A), which provides for what is commonly referred to as

"compassionate release."  "As amended by the recently enacted First Step Act, § 3582(c)(1)(A) empowers a district court to modify a term of imprisonment on a defendant's motion after the defendant has exhausted his administrative remedies." *United States v. Moldover*, No. 14-637, 2020 WL 6731111, at *5 (E.D. Pa. Nov. 13, 2020).[1]  Under § 3582(c)(1)(A)(i), a court may reduce an inmate's term of imprisonment only if the following conditions are met: (1) "the Court must find that extraordinary and compelling reasons warrant such a reduction"; (2) "any reduction granted by the Court must be consistent with any applicable policy statements issued by the Sentencing Commission"; and (3) "the proposed reduction must be consistent with the sentencing factors outlined in 18 U.S.C. § 3553(a)." *United States v. Brown*, No. 13-176-05, 2020 WL 2615616, at *1 (E.D. Pa. May 22, 2020) (internal quotation marks omitted).

"Although Congress has not defined the term 'extraordinary and compelling,' the Sentencing Commission has issued an application note to its relevant policy statement which provides guidance for defining the conjunctive term." *United States v. Ortiz Cabrera*, No. 18-304-01, 2021 WL 411502, at *3 (E.D. Pa. Feb. 5, 2021); *see also United States v. Andrews*, 12 F.4th 255, 260 (3d Cir. 2021) ("although the policy statement is no longer binding, it still sheds light on the meaning of extraordinary and compelling reasons").  As relevant here, Application Note 1 to Section 1B1.13 of the Sentencing Guidelines instructs that an "extraordinary and compelling" reason would be presented where a defendant is "suffering from a serious physical or mental condition . . . that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover."  In general, the "defendant has the burden of establishing circumstances warranting his

---

[1] Here, the government does not dispute that Mr. Singleton has complied with the statute's exhaustion requirement.  *See* Gov't Resp. Opp'n at 6.

3

release." *United States v. Neal*, Nos. 2:08-628 & 2:10-685, 2020 WL 5993290, at *4 (E.D. Pa. Oct. 9, 2020).

## III.    DISCUSSION

Mr. Singleton has not shown that extraordinary and compelling reasons exist which warrant a reduction in his sentence.  In denying Mr. Singleton's initial request, the Bureau of Prisons ("BOP") noted that he had suffered a bout of COVID-19 at the end of 2020, during which time he was transferred to a hospital for treatment, but explained that "[h]is medical condition [then] stabilized and he was transitioned to rehabilitation services for physical therapy (PT) and occupational therapy (OT)."  Apr. 9, 2021 BOP Mem. (ECF No. 320 at 7).  The BOP's decision memorandum further stated as follows:

> Mr. Singleton is no longer followed by OT given his ability to independently manage activities of daily living (ADLs) and instrumental ADLs such as bathing, dressing, grooming, feeding, and toileting.  Mr. Singleton's rehabilitative providers noted that he is functionally doing well and continues to make gains, despite the fact that he becomes easily fatigued and uses supplemental oxygen.  Mr. Singleton continues to work with PT.  During his most recent PT visit, it was noted that he maintains safety with functional mobility, appears to be experiencing less foot pain with ambulation, is at low risk for falling, can ambulate longer distances without taking breaks, and has no loss of balance with ambulation or transfers.

*Id.*  Accordingly, while the BOP acknowledged that Mr. Singleton presented a history of multiple medical ailments, it concluded that he was nonetheless still able to attend to the majority of his ADLs and instrumental ADLs independently, and therefore did not qualify for a sentence reduction.  Nothing in Mr. Singleton's instant motion casts doubt upon that conclusion or indicates that his circumstances have changed such that he is no longer able to attend to the majority of his ADLs independently.  Indeed, his medical records reflect that he has continued to receive physical therapy treatments at the federal medical center/prison where he is now housed, and that he has progressed throughout the course of those treatments.  In one medical note

recorded around the time that Mr. Singleton made his initial request for release, a physical

therapist described his progress as follows:

> Inmate continues to progress in physical therapy.  He is performing more time on
> the cardiovascular exercises and is continuing to do his strengthening program.  His
> fluctuating oxygen levels do limit his participation in physical therapy but he is
> doing well overall.  He would continue to benefit from [physical therapy] due to
> deconditioning and decreased [lower extremity] strength/endurance.    Rehab
> potential is fair.

ECF No. 323 at 28.  In short, he has not shown that he is "suffering from a serious physical or

mental condition . . . that substantially diminishes [his] ability . . . to provide self-care within the

environment of a correctional facility."  U.S.S.G. § 1B1.13, Application Note 1.

Moreover, Mr. Singleton has been vaccinated against COVID-19, and "courts in the

Third Circuit have agreed that the protection provided by an authorized COVID-19 vaccination

reduces the risk of serious illness from COVID-19 to such a degree that the threat of the

pandemic alone cannot present an extraordinary and compelling reason for compassionate

release."  *United States v. Hannigan*, No. 19-373, 2021 WL 1599707, at *6 (E.D. Pa. Apr. 22,

2021) (collecting cases); *see also United States v. Russo*, No. 20-47, 2021 WL 5792696, at *3

(E.D. Pa. Dec. 7, 2021) ("Now that COVID-19 vaccinations are being administered throughout

the Bureau of Prisons, compassionate release motions generally lack merit.") (internal quotation

marks omitted).

To be clear, the Court acknowledges that Mr. Singleton suffers from a variety of medical

ailments—some of which predated his bout with COVID-19, and some of which were caused by

it.  Specifically, his medical records reflect that he suffers from Type 2 diabetes, hypertension,

chronic obstructive pulmonary disease, anemia, hyperlipidemia, and polyneuropathy, and that his

battle with COVID-19 left him "with oxygen[-]dependent interstitial lung disease."  ECF No.

323 at 85.  While the Court does not discount the seriousness of any of these conditions, nor

disagree that, overall, Mr. Singleton could fairly be described as being in poor health, the fact remains that his current condition does not qualify as "extraordinary and compelling" under the applicable statute and guidelines such that a sentence reduction would be warranted. And in any event, even if the Court were to find that his medical circumstances did so qualify as "extraordinary and compelling," he would still not qualify for a sentence reduction after consideration of the § 3553(a) factors.

"Section 3553(a) establishes factors for a court to consider in initially imposing a sentence. Not every factor is applicable, however, when considering a motion for compassionate release." *United States v. Fanelli*, No. 18-543, 2022 WL 2440793, at *6 (E.D. Pa. July 5, 2022). Here, the Court finds that the relevant factors are:

> (1) the nature and circumstances of the offense and the history and characteristics of the defendant;
>
> (2) the need for the sentence imposed—
>
> > (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
> >
> > (B) to afford adequate deterrence to criminal conduct; [and]
> >
> > (C) to protect the public from further crimes of the defendant[.]

18 U.S.C. § 3553(a). None of these factors weigh in favor of granting compassionate release to Mr. Singleton. As the government correctly states in its opposition to his request for release:

> Singleton presents an appalling decades-long history of violent criminal conduct, culminating in the heinous crime at issue here, in which he shot a woman in the face to steal her money. He committed that crime at age 55, when he was already suffering from diabetes, . . . and only months after he was released from serving a decade in prison for a violent attack on numerous mall patrons and a Philadelphia police officer. Throughout his adult life, the only thing that has protected the community from Singleton's lawless behavior is incarceration. There is no reason to believe or trust that he would act differently now, despite his more debilitated state.

Gov't Resp. Opp'n at 19.  In addition, this Court finds Judge Shapiro's analysis of the § 3553(a)

factors to be just as on-point and cogent today as it was at the time of Mr. Singleton's sentencing.

As was stated to Mr. Singleton then:

> The nature and circumstances of this offense are revolting. . . .  Your characteristics
> [are] very puzzling, because I can't fathom why you behave the way you do, why
> you seem to, if not take pleasure, have no concern about the pain you inflict on
> other people. . . .  The[re is a] need for the sentence imposed [] to reflect how serious
> [the criminal offense] is, and to promote respect for the law, to provide just
> punishment to you for the offense, and to try and keep other people from doing the
> same thing.  I don't know how much publicity this will get, but when one trivializes
> a crime as serious as this, it's not good for society.  By having you incarcerated for
> the time the guidelines suggest [will] hopefully protect[] the public from further
> crimes.

July 25, 2013 Sentencing Tr. at 39–40.  Nothing in any of Mr. Singleton's various filings

indicates that anything has changed with respect to the pertinent § 3553(a) factors since the time

of sentencing.  Indeed, he has not even attempted to address any of those considerations.  They

clearly weigh heavily against granting any reduction to Mr. Singleton's sentence.  Granting his

motion "would not reflect the seriousness of his offense, promote respect for the law, or provide

just punishment, particularly because he has not yet served even half of his sentence." *United

States v. Fanelli*, 2022 WL 2440793, at *9.  His motion must be denied.


IV.    **CONCLUSION**

The Court concludes that Mr. Singleton has not demonstrated extraordinary and

compelling reasons justifying his release under 18 U.S.C. § 3582(c)(1)(A)(i), and that the

relevant § 3553(a) factors do not weigh in favor of granting a reduction to his sentence in any

event.  For all of the foregoing reasons, his motion for release will be denied with leave to refile,

should any pertinent circumstances change.

An appropriate order follows.

BY THE COURT:


/s/ C. Darnell Jones, II
**C. Darnell Jones, II   J.**